**LONE STAR GAS COMPANY, Appellant,**

v.

**MARTIN LINEN SUPPLY COMPANY, Appellee.**

No. 3293.

Court of Civil Appeals of Texas.

Eastland.

March 22, 1957.

Thompson, Knight, Wright & Simmons, Dallas, for appellant.

Webb, Sorrells, Schulz & Ford, Abilene, for appellee.

COLLINGS, Justice.

This is a plea of privilege case. Martin Linen Supply Company brought suit against Lone Star Gas Company, a Texas corporation, seeking to recover damages alleged to have been sustained to plaintiff's property in Taylor County because of negligence on the part of the defendant. Lone Star Gas Company filed a plea of privilege to be sued in Dallas County, Texas, asserting under oath that Dallas County was the place of its residence and that no exception to exclusive venue in the county of its residence existed. Martin Linen Supply Company timely filed a controverting affidavit adopting therein the allegations of its original petition and alleging that the defendant was guilty of negligence proximately causing plaintiff's property damage in Taylor County; that venue was, therefore, properly laid in Taylor County under Subdivision 23 of Article 1995, Vernon's Texas Civil Statutes. After hearing before the court without a jury judgment was entered overruling defendant's plea of privilege. Lone Star Gas Company has appealed.

Appellant, Lone Star Gas Company, is a domestic corporation with principal place of business and legal residence for the purpose of the venue statute, in Dallas County, Texas. The basis of appellee's claim of venue in Taylor County is Subdivision 23 of the statute. This subdivision provides for several exceptions to exclusive venue in the county where a defendant corporation's principal office is located. The portion of the subdivision applicable to this case is as follows:

"23. Corporations and Associations. —Suits against a private corporation, association, or joint stock company may be brought in the county in which its principal office is situated; or in the county in which the cause of action or a part thereof arose; * * *."

Appellant contends that the court erred in overruling its plea of privilege because appellee, Martin Linen Supply Company, failed to prove the necessary venue facts; that appellee failed to show (1) that it had a cause of action against appellant; (2) that any cause of action or part thereof against appellant arose in Taylor County, and (3) failed to show any negligence by appellant proximately causing appellee's damage.

Appellee, Martin Linen Supply Company, concedes that it had the burden of proving a cause of action against appellant which arose in Taylor County. Appellee contends that it has met this burden; that it has shown appellant negligent in that it failed to supply appellee with a reg-

ular flow of gas; that appellant allowed sand and rocks to accumulate in its meter, causing the flow of gas to appellee's boiler to cease temporarily; that such negligence of appellant occurred in Taylor County and was the proximate cause of the damage to appellee's property therein, and that venue was properly laid in Taylor County.

James Franks, who was the engineer and supervisor for Martin Linen Supply Company, was the only witness used at the hearing of the plea of privilege. His duties consisted of inspecting and maintaining appellee's equipment. He testified that at approximately 8:00 or 8:15 o'clock on the morning of September 13, 1955, an explosion occurred in the boiler of appellee's place of business in Abilene, Taylor County, Texas. Mr. Franks testified that prior to the time of the explosion there had been no mechanical defects in the boiler. On the morning of the explosion another employee of Martin Linen Supply Company had lighted the boiler at about 5:30 o'clock. As was his custom, Mr. Franks came to work at about 6:00 or 6:30 in the morning and looked at the boiler to see if everything was all right. He checked the boiler again at about 7:00 o'clock, which was the last check prior to the time of the explosion, and the burner was then lighted and properly operating. No person was in the boiler room at the time of the explosion. When Mr. Franks heard the explosion he ran into the boiler room as quickly as possible and found that the pilot light and the main burner were still burning. Mr. Franks stated that the cause of the explosion was a temporary cutting off of the gas pressure. He stated that the basis of his opinion was that nothing else could have caused the explosion. He testified "the gas would have had to have been off at least two or three minutes there, completely, with my burner wide open in order to accumulate enough gas in there to cause the explosion." However, Mr. Franks did not at the time report or state this opinion to either the appellant or the Abilene Fire Department. On or about October 31,

1955, after the boiler had been repaired and put back in operation, it was noticed that the regulator on appellant's gas meter "began to have a jumping up and down effect" which caused the fire to gradually go on and off, although "it wasn't cutting plum out." Mr. Franks thereupon called appellant, Lone Star Gas Company, and one of its employees came to appellee's place and made minor adjustments on the regulator. He also "opened the gas meter and gave it a thorough cleaning." Mr. Franks testified that the meter was "a pretty large piece of equipment and it drops down, has a sort of a bucket—shaped in below the line." Mr. Franks testified that it was in this part of the meter that a large quantity of rocks and sand was found, which was taken out when the meter was cleaned. He stated that he also saw dirt in the meter on top of what he termed a diaphram which had "a bunch of little gears and things in it", but that he did not know whether these gears had anything to do with the flow of gas. He said that the gas comes out of the meter into a pipe and goes into a diaphram regulator which to operate properly must be clean, but that he saw no dirt in appellant's regulator. Mr. Franks testified that after he had seen the sand and corrosion in the gas meter he made an examination of and cleaned, thoroughly, the regulator, pilot lights and the burners of appellee's boiler. He stated that the function of the regulator in appellee's plant was to keep the gas pressure from going too high or from dropping too low. He said that when he cleaned appellee Martin Linen Company's diaphram regulator, he found therein sand and corrosion which could have come from no place other than through the gas line from appellant's meter. He testified that when the gas flow is cut off from the burner with which appellee's boiler is now equipped that it "just doesn't come back on", but at the time of the explosion appellee did not have an automatic burner and in case of a gas failure the gas "definitely would have come back on." He stated that where the gas was cut off by reason of low pressure and

later came back on and came in contact with the hot bricks of the boiler, the gas would explode. He testified that the explosion here involved was a gas explosion "because it was the only thing that could have caused it." He testified that he took a sample of the sand that came out of appellant's meter and also a sample of the sand which he found in appellee's lines and from an examination of both of them knew they were the same.

In our opinion the evidence does not establish that appellant, Lone Star Gas Company, negligently failed to supply appellee with a regular flow of gas on September 13, 1955, thereby causing the explosion and resulting damages to appellee's property. The evidence does show that on or about the 31st of October, 1955, after new and better type burners were placed under appellee's boiler that the regulator on appellant's gas meter "began to have a jumping up and down effect" which caused the fire to gradually go on and off. On that date a substantial amount of rocks, sand and corrosion was found in appellant's gas meter, which appellee urges was the cause of the alleged temporary failure of gas flow or pressure. Appellee's witness, Franks, did testify, in effect, that the cause of the explosion was the temporary cutting off of the gas pressure. This opinion evidence, however, is without probative force because Franks' testimony concerning the specific acts of negligence of which appellant is alleged to be guilty shows that his opinion is not supported by fact but is based upon pure speculation and conjecture. Lone Star Gas Company v. Lazzara, Tex.Civ.App., 152 S.W.2d 824. On cross-examination Franks admitted, in effect, that he did not know whether the presence of the rocks and sand at the place found in appellant's meter had anything to do with the flow of gas or not. His opinion that there was a failure of the flow of gas is without probative force in so far as it relates to a failure of the flow from appellant's gas meter. Franks also testified

that a regulator must be clean to operate properly, but stated that he saw no dirt in appellant's regulator. His testimony suggests no reason for believing and will not support a finding that appellant's regulator was responsible for a gas failure on September 13, 1955. The specific facts testified to by Franks do not support his opinion testimony that the cause of the explosion was a temporary failure of the flow of gas into appellee's line from appellant's meter and regulator.

There was other testimony by Franks to the effect that sand was found in appellee's regulator similar to that found in appellant's gas meter. The evidence suggests that the condition of appellee's regulator, and not that of appellant's meter, was the cause of any alleged failure of gas flow, but also suggests that the presence of the sand in appellant's meter was the cause of the unclean condition of appellee's regulator. Appellee, as plaintiff, had the burden of pleading as well as proving a cause of action. Victoria Bank & Trust Company v. Monteith, 138 Tex. 216, 158 S.W.2d 63; Chiles v. Goswick, 148 Tex. 306, 225 S.W.2d 411; Uvalde Construction Co. v. Shannon, Tex.Civ.App., 165 S.W.2d 512. Appellee also had the burden of proving the same cause of action alleged and relied upon in his pleadings. If the evidence shows a cause of action, it is not that alleged in appellee's petition and controverting affidavit. Appellee's pleadings complain of appellant's negligent failure to supply a regular flow of gas and not of negligently permitting sand to be carried through its lines into appellee's regulator and burners. The evidence will not support a finding that the cause of the explosion under appellee's boiler on September 13, 1955, was a temporary failure to supply appellee with a regular flow of gas.

The judgment of the trial court is reversed and the cause remanded for another trial.